Jahan C. Sagafi (SBN 224887)
Molly J. Frandsen (SBN 320094)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: jsagafi@outtengolden.com
E-Mail: mfrandsen@outtengolden.com

Melissa L. Stewart*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mstewart@outtengolden.com

*admitted *pro hac vice*

*Attorneys for Plaintiffs and the Proposed Class and
Collective Members and Aggrieved Employees*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

OMAR KAYED, JESUS PRADO, SPENCER CARR, and ALONZO RIVAS individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ODOO, INC. and ODOO, S.A.,

Defendants.

Case No. 3:23-cv-03728-LJC

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Judge: Honorable Judge: Lisa J. Cisneros
Courtroom G – 15th Floor

Hearing Date: July 9, 2024
Hearing Time: 10:30 a.m.

Complaint Filed: July 27, 2023

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF UNOPPOSED MOTION

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE that on July 9, 2024, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom G – 15th Floor of this Court's San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Omar Kayed, Jesus Prado, Spencer Carr, and Alonzo Rivas ("Plaintiffs"), will, and hereby do, move this Court to: (1) conditionally certify the Classes; (2) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23 and Section 216(b) of the FLSA; (3) appoint Plaintiffs as the Class Representatives, their counsel as Class Counsel, and ILYM Group as Settlement Administrator; (4) set appropriate deadlines; (5) approve the proposed class notice and forms; and (6) schedule a final approval hearing.

This unopposed motion is based upon this Notice of Motion for Preliminary Approval of Settlement and the following Memorandum ("Motion"); the accompanying Declaration of Melissa L. Stewart filed herewith; all exhibits attached thereto, including the executed settlement agreement; the pleadings, papers, and other records on file in this action; all matters of which the Court may take notice; and such oral or documentary evidence presented at the hearing on the Motion.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................. 1

II.    BACKGROUND ................................................................ 2

       A.     Factual Background ................................................ 2

       B.     Procedural Background, Negotiation, and Settlement ......................... 3

III.   THE PROPOSED SETTLEMENT .................................................. 3

       A.     Eligible Members ................................................ 4

       B.     Settlement Amount ............................................... 4

       C.     Release of Claims ................................................ 5

       D.     Notice Procedure ................................................ 6

       E.     Settlement Administration ........................................... 7

       F.     Class Representative Service Awards to Be Requested in Fee
              Motion ...................................................... 7

       G.     Attorneys' Fees and Costs to Be Requested in Fee Motion ..................... 9

       H.     Handling of Unclaimed Funds ....................................... 10

       I.     Appointment of Class Representative and Class Counsel ...................... 10

IV.    ARGUMENT .................................................................. 10

       A.     Certification of the Rule 23 Classes Is Proper. .............................. 11

              1.     Rule 23(a) Is Satisfied ....................................... 11

              2.     Certification Is Proper Under Rule 23(b)(3). ....................... 13

              3.     Plaintiffs' Counsel Should Be Appointed as Class Counsel ............... 14

       B.     The Settlement Is Fair, Reasonable, and Adequate. .......................... 14

              1.     Plaintiffs' Case Faced Significant Risks ........................... 15

              2.     The Settlement Amount Is Appropriate. ........................... 16

                     a.     Recovery for Non-PAGA Claims .............................. 17

i

         b.     The PAGA Settlement Amount Is Reasonable. ................................................................. 20

    3.    The Extent of Discovery Supports Settlement. .................................... 21

    4.    Counsel's Experience and Views Support Approval. ........................... 21

C.    The Court Should Approve the FLSA Settlement. ........................................... 22

    1.    Court Approval Is Required. ................................................................ 22

    2.    The FLSA Settlement Should Be Approved. ....................................... 22

    3.    The Court Should Approve the Proposed Settlement Administrator. .................................................................................... 23

D.    The Court Should Approve the Proposed Notices and Administration Plan. ....................................................................................... 23

V.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED. ............................ 25

VI.    CONCLUSION ................................................................................................................ 25

ii

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                               **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................12, 13

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)........................................................................13

*Arredondo v. Southwestern & Pac. Specialty Fin., Inc.*,
No. 18 Civ. 1737, 2022 U.S. Dist. LEXIS 23758 (E.D. Cal. Feb. 9, 2022) ...........................15

*Beesley v. Int'l Paper Co.*,
No. 06 Civ. 703, 2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014) ................................8

*Betancourt v. Advantage Human Resourcing, Inc.*,
No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361 (N.D. Cal. Jan. 28, 2016) .........................15

*Billups-Larkin v. Aramark Servs., Inc.*,
No. 21 Civ. 6852, 2023 U.S. Dist. LEXIS 122756 (N.D. Cal. July 17, 2023) .......................20

*Brawner v. Bank of Am. N.A.*,
No. 14 Civ. 2702, 2016 U.S. Dist. LEXIS 4975 (N.D. Cal. Jan. 14, 2016) .............................7

*Campbell v. City of Los Angeles*,
903 F.3d 1090 (9th Cir. 2018) .......................................................23

*Cancilla v. Ecolab, Inc.*,
No. 12 Civ. 3001, 2015 U.S. Dist. LEXIS 106249 (N.D. Cal. Aug. 12, 2015).....................14

*Churchill Vill., LLC v. GE*,
361 F.3d 566 (9th Cir. 2004) .........................................................24

*Cotter v. Lyft, Inc.*,
176 F. Supp. 3d 930 (N.D. Cal. 2016) ..........................................16

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014)....................................................7

*Galeener v. Source Refrigeration & HVAC, Inc.*,
No. 13 Civ. 4960, 2015 U.S. Dist. LEXIS 193092 (N.D. Cal. Aug. 20, 2015).......................7

*Gutierrez v. New Hope Harvesting, LLC.*,
No. 19 Civ. 7077, 2024 U.S. Dist. LEXIS 76786 (C.D. Cal. Apr. 26, 2024).........................22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...........................................10, 11, 12, 14

iii

*Johnson v. Triple Leaf Tea, Inc.*,
  No. 14 Civ. 1570, 2015 U.S. Dist. LEXIS 170800 (N.D. Cal. Nov. 16, 2015)......................12

*Karl v. Zimmer Biomet Holdings, Inc.*,
  No. 18 Civ. 4176, 2019 U.S. Dist. LEXIS 111705 (N.D. Cal. July 2, 2019) ........................23

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................................................20

*Lopez v. Mgmt. & Training Corp.*,
  No. 17 Civ. 1624, 2020 U.S. Dist. LEXIS 70029 (S.D. Cal. Apr. 20, 2020) ..........................8

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ..............................................................................................22

*McLeod v. Bank of Am., N.A.*,
  No. 16 Civ. 3294, 2018 U.S. Dist. LEXIS 195314 (N.D. Cal. Nov. 14, 2018)......................21

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...........................................................................................18, 21

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523, 525 (C.D. Cal. 2004)...............................................................................10, 21

*Quiruz v. Specialty Commodities*,
  No. 17 Civ. 3300, 2020 U.S. Dist. LEXIS 209498 (N.D. Cal. Nov. 9, 2020).......................22

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................................15, 21

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ..................................................................................................1

*Seminiano v. Xyris Enterprise*,
  602 F. App'x 682 (9th Cir. 2015) ............................................................................................22

*Singleton v. Domino's Pizza, LLC*,
  976 F. Supp. 2d 665 (D. Md. 2013) ..........................................................................................8

*Tierno v. Rite Aid Corp.*,
  No. 05 Civ. 02520, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006)......................14

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)..................................................................................................................13

*Van Kempen v. Matheson Tri-Gas, Inc.*,
  No, 15 Civ. 66079660 (HSG), 2017 U.S. Dist. LEXIS 137182 (N.D. Cal. Aug.
  25, 2017) ...................................................................................................................................20

iv

*Villegas v. J.P. Morgan Chase & Co.*,
   No. 09 Civ. 00261, 2012 U.S. Dist. LEXIS 16670 (N.D. Cal. Nov. 20, 2012).....................19

*Walsh v. CorePower Yoga LLC*,
   No. 16 Civ. 5610, 2017 U.S. Dist. LEXIS 20974 (N.D. Cal. Feb. 14, 2017)..................13, 14

*Walsh v. CorePower Yoga LLC*,
   No. 16 Civ. 5610, 2017 U.S. Dist. LEXIS 163991 (N.D. Cal. Oct. 3, 2017) .........................8

*Walton v. AT&T Servs.*,
   No. 15 Civ. 3653, 2018 U.S. Dist. LEXIS 245928 (N.D. Cal. Feb. 14, 2018).........................7

*Wershba v. Apple Comput., Inc.*,
   91 Cal. App. 4th 224 (2001) ...............................................................................................9

*Whiteway v. FedEx Kinko's Off. & Print Servs., Inc.*,
   No. 05 Civ. 2320, 2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sept. 13, 2006).........................14

*Williams v. Superior Court*,
   3 Cal. 5th 531 (2017) ........................................................................................................1

*Zamora v. Lyft, Inc.*,
   No. 16 Civ. 02558, 2018 U.S. Dist. LEXIS 166618 (N.D. Cal. Sept. 26, 2018)....................13

**STATUTES**

29 U.S.C. § 216(b) .................................................................................................................17

29 U.S.C. § 260 .....................................................................................................................17

Cal. Lab. Code § 2699(l)(2) ...............................................................................................1, 2

Cal. Lab. Code § 2699(e)(2) .................................................................................................20

Cal. Lab. Code § 203 ...........................................................................................................17

Cal. Lab. Code § 226(e)(1) ..................................................................................................18

N.Y.L.L. § 195 ......................................................................................................................17

N.Y.L.L. § 198 ......................................................................................................................17

**RULES**

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.15 (5th ed.)....................14

v

Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2002) ................................................................................................................11

*Illustrative Forms of Class Action Notices: Overview*, Fed. Judicial Ctr., https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction ...........................................................................................................23

Manual for Complex Litigation §§ 21.632-634 (4th ed. 2004) ...................................................10

Northern District of California, *Procedural Guidance for Class Action Settlements*, https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ ....................................................................................... *passim*

vi

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION

## I.    INTRODUCTION

Plaintiffs Omar Kayed, Jesus Prado, Alonzo Rivas, and Spencer Carr (collectively "Plaintiffs") respectfully seek preliminary approval of a $4,500,000 non-reversionary common fund settlement of this class, collective, and PAGA action on behalf of approximately 550 individuals ("California Class Members", "New York Class Members," "Putative Collective Members," and "PAGA Members," as more fully defined below) as set forth in the parties' Settlement Agreement and Release ("Settlement" or "Settlement Agreement"), attached as Exhibit 1 to the Declaration of Melissa L. Stewart in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Stewart Decl."). The Settlement will resolve all claims against Defendants Odoo, Inc. and Odoo, S.A. ("Defendants" or "Odoo") in Plaintiffs' Second Amended Complaint ("SAC"). *See* ECF No. 50. The average estimated net recovery of $4,997 per Class Member (or $67.75 net average per workweek) is a strong result supporting approval.

The proposed settlement readily satisfies Rule 23 and applicable authority. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048-50, 1060 (9th Cir. 2019) (requirements of Fed. R. Civ. P. 23); *Williams v. Superior Court*, 3 Cal. 5th 531, 549 (2017) (requirements of Cal. Lab. Code § 2699(l)(2)); Northern District of California, *Procedural Guidance for Class Action Settlements*, https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last visited May 31, 2024) ("*District Guidance*"). The proposed settlement also satisfies the Fair Labor Standards Act's ("FLSA") collective action requirements and applicable authority. The parties have zealously litigated the case, with litigation over court-authorized notice to the FLSA Collective, informal discovery for mediation purposes, and two separate mediation sessions with the assistance of experienced class and collective action mediators, Judge Brian C. Walsh and Louis Marlin, respectively, culminating with a fully executed memorandum of

1

understanding on January 22, 2024 and a fully executed Settlement Agreement on May 14, 2024.[1]

## II.    **BACKGROUND**

### A.    **Factual Background**

Odoo is a business management software company with approximately 10 offices around the world and its main United States office in San Francisco, California.  SAC ¶ 2.  Plaintiffs, Class Members, Putative Collective Members, and PAGA Members work or worked for Odoo nationwide, in the job titles of Account Executive, Account Manager, Channel Account Manager, Partner Recruiter, Customer Success Manager, and Sales Specialist (collectively, "Sales Representatives").  *Id.* ¶ 1.

Plaintiffs allege that Odoo uniformly misclassified Sales Representatives as exempt from federal and state overtime provisions and failed to pay them any overtime wages.  *Id.* ¶ 6.  Plaintiffs regularly worked more than 40 hours per workweek to meet demanding sales targets, without receiving overtime compensation for all the hours worked.  *Id.* ¶¶ 4-5.  In addition to the overtime claims, Plaintiffs Kayed, Prado, and Rivas allege that Odoo failed to: timely pay California Class Members their proper overtime wages during employment and upon separation, provide them with accurate wage statements, and reimburse them for a reasonable percentage of their home internet bills.  *Id.* ¶¶ 152-171.  They also bring an Unfair Competition Law claim and a Private Attorneys General Act ("PAGA") claim based on these alleged violations.  *Id.* ¶¶ 172-179, 194-200.  Plaintiff Carr additionally alleges that Odoo failed to provide New York Class Members with accurate wage statements and wage notices.  SAC ¶¶ 180-193.

Odoo denies these allegations, and the Court has not ruled on the merits.

---

[1] Plaintiffs will submit the settlement and approval motion to the LWDA simultaneously with the filing of this motion, as required by Cal. Lab. Code § 2699(l)(2).  Stewart Decl. ¶ 41.  The settlement administrator will send the Class Action Fairness Notice within 10 days of the filing of this Motion.  *See id.* Ex. 1 (Settlement Agreement) § 3.3.

**B.  Procedural Background, Negotiation, and Settlement**

On August 25, 2022, in an effort to explore a potential pre-litigation resolution, Plaintiffs informed Odoo of their claims and invited the company to consider the possibility of settlement discussions.  Stewart Decl. ¶ 12.  The parties subsequently agreed to explore pre-suit mediation and entered into a tolling agreement on behalf of Plaintiffs and Sales Representatives on October 21, 2022.  The parties then began extended settlement discussions.  *Id.* ¶ 13.

Prior to mediation, the parties engaged in informal discovery.  Odoo produced Plaintiffs' personnel files, Odoo's policies, and payroll data for Plaintiffs and Sales Representatives.  This allowed Plaintiffs' Counsel to construct a damages model.  *Id.* ¶ 14.  The parties also drafted and exchanged mediation briefs setting forth their respective positions as to liability, class and collective certification, and damages.  *Id.* ¶ 15.

On July 14, 2023, the parties mediated this case with the assistance of experienced mediator Brian C. Walsh but were not able to reach a resolution.  *Id.* ¶ 16.  On July 27, 2023, Plaintiffs filed the Complaint.  ECF No. 1.  Plaintiffs filed a PAGA notice on July 27, 2023, and a First Amended Complaint on October 3, 2023, to add a PAGA Claim.  Stewart Decl. ¶ 17; ECF No. 27.  The operative complaint is the SAC, which added Plaintiff Rivas as a Plaintiff.  ECF No. 50.  The parties litigated conditional certification, which the Court granted, ECF No. 33, and had begun to engage in formal discovery before they returned to settlement discussions.  Stewart Decl. ¶ 19.

The parties participated in a second full-day mediation session on December 8, 2023, with the assistance of experienced mediator Louis Marlin, and accepted a mediators' proposal on December 29, 2023, with a more detailed term sheet negotiated and executed on January 22, 2024.  *Id.* ¶ 20.  The parties finalized and fully executed the Settlement Agreement on May 14, 2024.  *Id.*

## III.  THE PROPOSED SETTLEMENT

The details of the Settlement are set forth in the Settlement Agreement, attached as Exhibit 1 to the Stewart Declaration.  A summary is set forth below.

### A.    Eligible Members

Subject to Court approval, the Eligible Members comprise: (a) "Class Members," where "Class Members" means those individuals employed by Odoo as Sales Representatives in California between October 21, 2018 and the Release Date[2] ("California Class Members"), and in New York between October 21, 2016 and the Release Date (the "New York Class Members"), (b) Putative Collective Members, defined as Sales Representatives who work or worked for Odoo nationwide except in California or New York between October 21, 2019 and the Release Date, and (c) "PAGA Members," defined as individuals employed by Odoo as Sales Representatives in California from October 21, 2021 and the Release Date (the "PAGA Period"). Stewart Decl., Ex. 1 §§ 1.5, 1.6, 1.8, 1.27, 1.28, 1.35, 1.37, 1.47, 1.49.  A vast majority of the Eligible Members are Class Members.  The Eligible Members are estimated to be 550 individuals.  Stewart Decl. ¶ 23.  This estimate is based on data provided by Defendants prior to the second mediation.  *Id*.

### B.    Settlement Amount

The $4,500,000 Total Settlement Amount will cover: (a) Settlement Payments to Participating Class Members and Participating Collective Members for a capped number of workweeks;[3] (b) the PAGA Fund of $150,000, with 75%, or $112,500, paid to the California Labor and Workforce Development Agency ("LWDA Payment") and 25%, or $37,500, paid to PAGA Members ("PAGA Payment"); (c) Service Awards of up to $15,000 for Plaintiffs Carr, Kayed, and Prado, and $10,000 to Plaintiff Rivas; (d) Plaintiffs' Counsel's attorneys' fees of up

---

[2] "Release Date" is either the date of preliminary approval of settlement by the Court, or if Odoo elects, the date corresponding to the accrual of 40,565.8 Eligible workweeks, provided that such date is earlier than both March 7, 2024 and the date of preliminary approval of the settlement. *Id.* § 1.49.

[3] The settlement is intended to cover no more than 36,878 workweeks.  Should the total number of workweeks increase by more than 10% (i.e., above 40,565.8 total workweeks), Odoo will have the option to either increase the Total Settlement Amount by a proportionate additional amount for each additional workweek beyond 40,565.8 or, if the 10% increase occurs before the earlier of March 7, 2024 or the date of the Preliminary Approval Order, Odoo may elect to shorten the Release Date to the date corresponding to the accrual of 40,565.8 workweeks instead of paying more for each additional workweek beyond that threshold.  Stewart Decl., Ex. 1 § 9.1(b).

to one-third of the Settlement Amount ($1,500,000), as awarded by the Court; (e) litigation costs and expenses of up to $30,000, as awarded by the Court; and (f) settlement administration costs not to exceed $16,750.  Stewart Decl., Ex. 1 §§ 1.3, 1.24, 1.26, 1.34, 1.36, 1.57, 1.61, 3.2, 9.1, 9.3(a), 9.4(a), 9.5.  The Total Settlement Amount does not include Employer Payroll Taxes, which Defendants will fund separately.  *Id.* at § 1.61.

Participating Class and Putative Collective Members will receive a Settlement Check or, if they elect, Electronic Payment for their proportionate share of the Net Fund (defined as the amount remaining after attorneys' fees and costs, service awards, settlement administration costs, and the PAGA Fund is deducted) based on the number of calendar weeks worked during the relevant period and whether or not they signed an arbitration agreement.  *Id.* §§ 1.2, 1.16, 1.17, 1.26, 9.6.  Class and Putative Collective Members will receive 1 point for each Eligible Workweek covered by an arbitration agreement with Odoo, and 1.5 points for each Eligible Workweek not covered by such agreements.  *Id.* § 9.6(a).

PAGA Members will be entitled to an additional PAGA Amount for their estimated proportionate share of the PAGA Payment based on weeks worked in the PAGA Period.  *Id.* §§ 1.18, 9.5, 9.7.

## C.    Release of Claims

Participating Class Members and Putative Collective Members will receive a Settlement Check without having to submit a claim form or take any action.  They can also elect to receive payment electronically.  *Id.* § 4.2.  Participating California Class Members will release all "Released California Claims"[4] and Participating New York Class Members will release

---

[4] "Released California Claims" means any and all California wage and hour claims pled in the Operative Complaint, or that could have been pled based on the facts alleged in the Operative Complaint, and that accrued during employment as an exempt-classified Sales Representative, relating back to October 21, 2018, and continuing through the Release Date, including, without limitations, all claims for unpaid overtime wages, claims related to wage statements, untimely payment of wages, and unreimbursed expenses, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.  *Id.* § 1.50.

"Released New York Claims."[5]  *Id.* § 10.2.

Each Putative Collective Member and Participating Class Member who cashes a Settlement Check or elects Electronic Payment will also release the "Released Collective Claims."[6]  *Id.* § 10.1.  Additionally, PAGA Members will release all "Released PAGA Claims."[7]  *Id.* § 10.3.

### D.    Notice Procedure

Within seven days of entry of the Preliminary Approval Order, Defendants' Counsel shall provide the Settlement Administrator and Plaintiffs' Counsel with the Class List.  *Id.* §§ 1.9, 4.1. The Notices of Settlement shall be sent by the Settlement Administrator to the Eligible Members, by first-class mail, e-mail, and text message within 21 days of entry of the Preliminary Approval Order.  *Id.* § 4.3.  The Settlement Administrator shall use all commercially reasonable means to confirm addresses and obtain new addresses, and to the extent a mailed Notice is returned, the Settlement Administrator will skip-trace the returned mail up to two times.  *Id.* § 4.4.  Class Members will have 60 days from the initial Notice mailing date or 30 days from the date of re-mailing, whichever is later, provided that no re-mailings will be completed after the 60th day

---

[5] "Released New York Claims" means any and all New York wage and hour claims pled in the Operative Complaint, or that could have been pled based on the facts alleged in the Operative Complaint, and that accrued during employment as an exempt-classified Sales Representative, relating back to October 21, 2016, and continuing through the Release Date, including, without limitations, all claims for unpaid overtime wages, claims related to wage statements and wage notices, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.  *Id.* § 1.53.

[6] "Released Collective Claims" means the wage and hour claims pled in the Operative Complaint, or that could have been pled based on the facts alleged in the Operative Complaint, and that accrued during employment as an exempt-classified Sales Representative, relating back to October 21, 2019, and continuing through the Release Date, including, without limitations, all state and federal claims for unpaid overtime wages and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.  *Id.* § 1.52.

[7] "Released PAGA Claims" means any and all claims relating to penalties under California's Private Attorney General Act ("PAGA") pled in the Operative Complaint and PAGA Notice Letter, or that could have been pled based on the facts alleged in the Operative Complaint and PAGA Notice Letter, and that accrued during employment as an exempt-classified Sales Representative, relating back to October 21, 2021 and continuing through the Release Date. *Id.* § 1.54.

6

following the initial mailing, to object to the Settlement or to opt out.  *Id.* §§ 1.4, 5.1, 6.1.  All Settlement funds will be paid out, i.e., there will be no reversion to Defendants.  *Id.* § 9.2.

### E.    Settlement Administration

The Settlement Administrator estimates that its costs will be approximately $16,750. Declaration of Lisa Mullins ("ILYM Decl.") ¶ 11 & Ex. C.  Plaintiffs sought bids from four settlement administrators before selecting ILYM Group ("ILYM"), an administrator with significant expertise, skill, and experience.  Stewart Decl. ¶ 50.  The Settlement Administrator's anticipated costs amount to just 0.37% of the Total Settlement Amount, which is reasonable given the amount and complexity of the work to be performed and is in line with settlement administration fees in comparable cases.  *Id.* ¶ 53.

### F.    Class Representative Service Awards to Be Requested in Fee Motion

Under the Settlement, Plaintiffs Kayed, Prado, and Carr will request Class Representative Service Awards of up to $15,000 each.  Stewart Decl., Ex. 1, § 9.4(a).  Plaintiff Rivas will request a Class Representative Service Award of up to $10,000.  *Id.*  Plaintiffs will present evidence and argument supporting these awards as reasonable in the forthcoming fee motion.

Courts in this District traditionally approve service awards of this amount and more based on several factors: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, (3) the time and effort that representatives put into the litigation, and (4) the reasonable fears of workplace retaliation. *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334-35 (N.D. Cal. 2014) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)); *see also Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13 Civ. 4960, 2015 U.S. Dist. LEXIS 193092, at *11 (N.D. Cal. Aug. 20, 2015) (approving service awards of $27,000, $25,000, and $15,000); *Walton v. AT&T Servs.*, No. 15 Civ. 3653, 2018 U.S. Dist. LEXIS 245928, at *8 (N.D. Cal. Feb. 14, 2018) (approving $20,000 award); *Brawner v. Bank of Am. N.A.*, No. 14 Civ. 2702, 2016 U.S. Dist. LEXIS 4975, at *15-16 (N.D. Cal. Jan. 14, 2016) (approving $15,000 award).

1    The proposed Service Awards are reasonable in light of (a) the value created by Plaintiffs

2  in initiating and prosecuting this action (factor two, above); (b) the effort and time they invested

3  to pursue claims on behalf of all Eligible Members (factors one and three); and (c) the risks they

4  incurred of adverse action from potential employers, business partners, landlords, and others by

5  virtue of serving as the public face of adversarial litigation against an employer (factor four, as

6  well as broader considerations).

7    First, Plaintiffs made this Settlement possible.  If they had not stepped forward, the

8  litigation would not have occurred, and the Eligible Members likely would have received

9  nothing.  Second, Plaintiffs spent significant time providing information to assist Plaintiffs'

10  Counsel with pre-suit investigation, providing Plaintiffs' Counsel with information throughout

11  the litigation, submitting initial disclosures and declarations in support of the motion for court-

12  authorized notice, and staying apprised of developments in the case.  Stewart Decl. ¶ 27.  Third,

13  Plaintiffs assumed considerable reputational risks with respect to their current and future

14  employers by putting their names on a wage and hour complaint.[8]  Plaintiffs' names are

15  prominently visible in public records.  For example, a Google search of "Kayed Odoo" yields

16  several results on the first page describing this litigation.  Id. ¶ 28.  While any named plaintiff

17  faces potential risk when putting their name on a complaint, the risks are higher here.  As

18  Plaintiffs will further detail in the forthcoming service award motion, as Sales Representatives in

19

20  [8] "[C]ourts recognize the 'unique risks' named plaintiffs in employment class actions face
with respect to future employment." *Walsh v. CorePower Yoga LLC*, No. 16 Civ. 5610, 2017

21  2017 U.S. Dist. LEXIS 163991, at *40(N.D. Cal. Oct. 3, 2017); *see also, e.g., Lopez v. Mgmt. & Training Corp.*,

22  No. 17 Civ. 1624, 2020 U.S. Dist. LEXIS 70029, at *30 (S.D. Cal. Apr. 20, 2020) (class
representatives

23  "face stigma upon future employment opportunities having sued a former employer"); *Beesley v.

24  Int'l Paper Co.*, No. 06 Civ. 703, 2014 U.S. Dist. LEXIS 12037, at *13-13 (S.D. Ill. Jan. 31, 2014)

25  (acknowledging that litigation against one's employer "carries unique risks and fortitude

26  including alienation from employers or peers"); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp.
2d 665, 691(D. Md. 2013) (noting that named plaintiffs risk future employers finding out,

27  through a simple Google search, that they filed a class action lawsuit against their prior

28  employer).

8

the software sales industry, Plaintiffs' work requires a visible internet presence.  Plaintiffs often use LinkedIn and other social media to perform their job responsibilities and are frequently recruited via LinkedIn.  *Id.* ¶ 29.  <u>Fourth</u>, in contrast to other Eligible Members, all Plaintiffs signed a general release of claims in consideration for the service awards.  *Id.* Ex. 1 § 10.4.  In short, Plaintiffs' participation in the case was imperative to its success, and the requested service awards are reasonable in light of the substantial recovery and applicable precedent.

### G.    Attorneys' Fees and Costs to Be Requested in Fee Motion

Consistent with the Settlement Agreement, in their fee motion, Counsel will apply for attorneys' fees of one-third of the Total Settlement Amount of $4,500,000 (i.e., $1,500,000), plus out-of-pocket costs incurred in prosecuting the action, of up to $30,000.  *Id.* § 9.3(a).  As of May 24, 2024, Counsel's lodestar is already $631,305 reflecting over 938 attorney and paralegal hours, in addition to estimated litigation costs of $25,702.  Stewart Decl. ¶¶ 56, 64.  These amounts do not account for future work to be performed to (1) secure preliminary approval; (2) oversee implementation of notice and respond to Eligible Member inquiries during the notice period; (3) brief and argue final approval; and (4) oversee implementation of the Settlement and report to the Court regarding the final steps in the litigation, including the Post-Distribution Accounting required by the District Court's Guidance.  *Id.* ¶¶ 56, 64.  The current multiplier on Plaintiffs' Counsel's lodestar is 2.38, which will decrease as Plaintiffs' Counsel continue to perform work for the benefit of the Class and Collective Members, such as briefing, preparing for, and arguing for settlement approval, responding to Class and Collective Members' questions, and overseeing settlement administration.  *Id.* ¶ 57.  California courts have previously awarded multipliers in this range.  *Wershba v. Apple Comput., Inc*., 91 Cal. App. 4th 224, 225 (2001) ("Multipliers can range from 2 to 4 or even higher.").  Plaintiffs will argue in their forthcoming fee motion that the multiplier is justified here based on the relevant factors including that the settlement amount of approximately $4,997 per person is an excellent result

1    and that this case presented complex legal questions requiring substantial attorney skill and

2    zealous advocacy.

3          **H.**    **Handling of Unclaimed Funds**

4        Any settlement amounts allocated to Class Members who submit Opt-Out Statements

5    will become part of the Net Fund to be distributed to Putative Collective Members and

6    Participating Class Members.  Stewart Decl., Ex. 1, § 9.1(a).  The Settlement provides that any

7    unclaimed funds from Settlement Checks that are not cashed after a reasonable time (despite

8    Plaintiffs' Counsel's and the Settlement Administrator's robust efforts to reach Eligible

9    Members and provide replacement checks where necessary) shall be deposited in the

10   Participating Class Member, Putative Collective Member, or PAGA Member's name as

11   unclaimed property under applicable state procedure for unclaimed property.  *Id.* at § 9.2(b).

12         **I.**    **Appointment of Class Representative and Class Counsel**

13       Plaintiffs propose that they be appointed Class Representatives and that their counsel –

14   Jahan C. Sagafi, Melissa L. Stewart, and Molly J. Frandsen of Outten & Golden LLP – be

15   appointed Class Counsel.

16   **IV.**    <u>**ARGUMENT**</u>

17       Settlement approval "involves a two-step process in which the Court first determines

18   whether a proposed class action settlement deserves preliminary approval and then, after notice

19   is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomm. Coop. v.*

20   *DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Manual for Complex Litigation

21   §§ 21.632-634 (4th ed. 2004).  Preliminary approval requires two elements: <u>first</u>, the court must

22   determine that the settlement class meets the requirements for class certification if it has not yet

23   been certified, *see* Fed. R. Civ. P. 23(a), (b); and <u>second</u>, the court must determine that the

24   settlement is fair, reasonable, and adequate, *see* Fed. R. Civ. P. 23(e)(2).  *See Hanlon v. Chrysler*

25   *Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998).

26

27

28

### A.     Certification of the Rule 23 Classes Is Proper.

For settlement purposes only, the parties agree to certification of the California and New York classes.  "The validity of use of a temporary settlement class is not usually questioned."  Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2002).  The proposed Classes are coextensive with the Classes proposed in the operative Second Amended Complaint.  Stewart Decl. ¶ 22; *District Guidance* § 1(a).  The relevant factors also weigh in favor of conditional certification for purposes of settlement.

### 1.     Rule 23(a) Is Satisfied.

First, numerosity is met because joinder of Class Members would be impractical.  *See* Fed. R. Civ. P. 23(a)(1).  Plaintiffs estimate that there are approximately 428 California Class Members and 121 New York Class Members.  Stewart Decl. ¶ 23.  These classes readily satisfy Rule 23(a)(1)'s numerosity requirement.

Second, commonality is met because "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit "construe[s]" this requirement "permissively."  *Hanlon*, 150 F.3d at 1019.  Even though proposed Class Members "may possess different avenues of redress," so long as "their claims stem from the same source," there is sufficient commonality "to satisfy the minimal requirements of Rule 23(a)(2)."  *Id*. at 1019-20.  There are common issues presented here because Plaintiffs have alleged a single policy of classifying all Sales Representatives as exempt from overtime protections.  Common legal and factual questions about Defendants' pay practices accordingly predominate over individual questions in both the New York and California Classes.  Here, common issues include, but are not limited to: whether Odoo misclassified Class Members as overtime-exempt and therefore failed to compensate them for hours worked in excess of 40 hours per workweek; whether Odoo unlawfully failed to keep and furnish Class Members with accurate wage statements; whether Odoo unlawfully failed to timely pay wages due during employment and upon separation in violation of the California Labor Code; whether Odoo failed to reimburse California Class

Members for reasonable and necessary business expenses; and whether Odoo failed to provide the New York Class Members with accurate wage notices.  SAC ¶¶ 87, 99.

Third, typicality is satisfied.  Rule 23(a)(3) typicality requires a finding that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Under the rule's "permissive" standard, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Johnson v. Triple Leaf Tea, Inc.*, No. 14 Civ. 1570, 2015 U.S. Dist. LEXIS 170800, at *7 (N.D. Cal. Nov. 16, 2015) (quoting *Hanlon*, 150 F.3d at 1020).  Here, Plaintiffs are typical of the Classes they propose to represent because they worked as Sales Representatives in California and New York and were subject to the same policy of exempt classification and related violations.  Plaintiffs' claims, therefore, arise from the same set of facts and legal theories and the typicality requirement is satisfied.

Fourth, Plaintiffs have fairly and adequately protected the interests of the California and New York classes.  *See* Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is met where class representatives (1) have common, and not antagonistic, interests with unnamed class members; and (2) will vigorously prosecute the interests of the class through qualified counsel.  *See Hanlon*, 150 F.3d at 1020; *cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-27 (1997) (adequacy not satisfied where named plaintiffs' interests were in conflict with absent class members').  Here, Plaintiffs share a common interest with the Class Members they seek to represent, in that they all allege that they suffered the same type of injury, and they share an interest in vigorous prosecution.  Plaintiffs have vigorously represented the interests of their fellow Class Members and devoted substantial time to the prosecution of this action.  Stewart Decl. ¶ 24.

In addition, Plaintiffs are represented by adequate counsel.  Outten & Golden LLP has extensive experience litigating complex civil rights and employment class actions and have vigorously prosecuted this action on behalf of Plaintiffs and Class Members through two mediations, motion practice, informal discovery, and early formal discovery.  *Id.* ¶ 11 (collecting

12

1  cases).  For example, in one case, Judge Chhabria found that Outten & Golden "ha[d] capably
2  and effectively represented the Settlement Class Members' interests," and praised them for "their
3  outstanding work on this case."  *Zamora v. Lyft, Inc.*, No. 16 Civ. 02558, 2018 U.S. Dist. LEXIS
4  166618, at *10 (N.D. Cal. Sept. 26, 2018); *see also, e.g.*, *Walsh v. CorePower Yoga LLC*, No. 16
5  Civ. 5610, 2017 U.S. Dist. LEXIS 20974, at *24-25 (N.D. Cal. Feb. 14, 2017) ("[Outten &
6  Golden] ha[s] a proven track record in the prosecution of class actions as they have successfully
7  litigated and tried many major class action cases.").  For these reasons, Plaintiffs' Counsel satisfy
8  the adequacy requirement of Rule 23(a)(4).

9              **2.    Certification Is Proper Under Rule 23(b)(3).**

10        Rule 23(b)(3) requires that common questions predominate over individual ones, and that
11  a class action is superior to other available methods for adjudicating the controversy.  *See* Fed. R.
12  Civ. P. 23(b)(3).  Both requirements are met here.

13        The proposed classes are sufficiently cohesive to satisfy predominance.  *See Amchem*,
14  521 U.S. at 623 (Predominance "tests whether proposed classes are sufficiently cohesive to
15  warrant adjudication by representation.") (citation omitted).  Predominance does not require
16  "that each element of [a plaintiff's] claim [be] susceptible to classwide proof."  *Amgen Inc. v.*
17  *Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks and citation
18  omitted).  Rather, "[t]he predominance inquiry asks whether the common, aggregation-enabling,
19  issues in the case are more prevalent or important than the non-common, aggregation-defeating,
20  individual issues."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation
21  omitted).  Here, Plaintiffs allege a single policy of classifying all Sales Representatives as
22  exempt from overtime protections, and other claims – related to timely payments and wage
23  statements – are largely derivative of the misclassification question.  Common legal and factual
24  questions about Odoo's pay practices accordingly predominate over individual questions.

25        Superiority rests on factors like individual Class Members' desire to bring individual
26  actions and the utility of concentrating the litigation in one forum.  *See* Fed. R. Civ. P. 23(b)(3).
27  Here, "there is no indication[] that class members seek to individually control their cases, that

28                                              13

individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason." *Tierno v. Rite Aid Corp.*, No. 05 Civ. 02520, 2006 U.S. Dist. LEXIS 71794, at \*33 (N.D. Cal. Aug. 31, 2006); *see also Amchem*, 521 U.S. at 615 (internal citation omitted). Individual lawsuits from more than one hundred plaintiffs, for modest damages, would be wasteful and inefficient for the court system. *See, e.g.*, *Whiteway v. FedEx Kinko's Off. & Print Servs., Inc.*, No. 05 Civ. 2320, 2006 U.S. Dist. LEXIS 69193, at \*30 (N.D. Cal. Sept. 13, 2006) (citing *Tierno*, 2006 U.S. Dist. LEXIS 71794, at \*19). Because the class mechanism will achieve economies of scale for Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications, superiority is met.

### 3. Plaintiffs' Counsel Should Be Appointed as Class Counsel.

Adequacy of class counsel depends on (1) work performed on the matter, (2) experience, (3) knowledge of the law, and (4) the resources that class counsel can commit. *See* Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs' Counsel readily satisfy these criteria, as set forth above. *See supra* § IV(A)(1); *see also* Stewart Decl. ¶ 11.

### B. The Settlement Is Fair, Reasonable, and Adequate.

Once the Court has found class certification to be proper, the next step of the preliminary approval process is to assess whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026 (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Typically, the first-stage analysis looks for "obvious deficiencies," with preliminary approval being granted if the settlement is non-collusive and within the range of possible final approval. *Walsh*, 2017 U.S. Dist. LEXIS 20974, at \*19 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).[9]

When considering whether to grant approval, courts often "put a good deal of stock in the

---

[9] *See also Cancilla v. Ecolab, Inc.*, No. 12 Civ. 3001, 2015 U.S. Dist. LEXIS 106249, at \*9 (N.D. Cal. Aug. 12, 2015) (focusing preliminary approval analysis on "noncollusive negotiations," the lack of "obvious deficiencies" or "preferential treatment," and being "with[in] the range of possible approval") (internal citations omitted); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.15 (5th ed.).

14

product of an arm[']s-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citations omitted).  Courts may also assess the following factors, which are assessed in greater detail at final approval: (1) "the strength of the plaintiffs' case"; "the risk, expense, complexity, and likely duration of further litigation"; and "the risk of maintaining class action status throughout the trial"; (2) "the amount offered in settlement"; (3) the extent of discovery completed and the stage of the proceedings"; and (4) "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026 (internal citation omitted).

### 1. Plaintiffs' Case Faced Significant Risks.

"Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361, at *10-11 (N.D. Cal. Jan. 28, 2016) (quoting *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010)).  Here, Plaintiffs face substantial obstacles to class-wide recovery.  Stewart Decl. ¶ 42.

First, Defendants will argue that well over half of the Eligible Members were subject to individual arbitration agreements that should foreclose participating in a class or collective action.  *Id.* ¶ 43.  While Plaintiffs would challenge the validity and enforceability of these agreements, Plaintiffs' Counsel are experienced class action litigators and recognize the challenges associated with these arguments.  *Id.*  Moreover, Sales Representatives compelled to arbitration who wish to pursue a recovery would be required to participate in intensive individual arbitrations, including document production, deposition testimony, and testifying at the arbitration hearing, to recover on a misclassification claim with a relatively small dollar value. *Id.* ¶ 44; *see, e.g.*, *Arredondo v. Southwestern & Pac. Specialty Fin., Inc.*, No. 18 Civ. 1737, 2022 U.S. Dist. LEXIS 23758, at *31 (E.D. Cal. Feb. 9, 2022) (granting preliminary approval of settlement where "it may be cost prohibitive for putative class members [bound by arbitration agreements] to pursue wage claims on an individual basis") (citation omitted).

Second, Plaintiffs may face obstacles in winning class certification or maintaining the class and collective through trial.  Stewart Decl. ¶ 45.  Defendants would likely argue that

15

differences among Sales Representatives' job duties or compensation levels preclude class certification or warrant decertification of a collective, if certified. Although Plaintiffs disagree, Plaintiffs recognize that obtaining and maintaining class certification is always a significant obstacle. *Id*.

<u>Third</u>, a trial on the merits would involve significant risks for Plaintiffs on liability issues. *Id.* ¶ 46. Odoo would argue that Sales Representatives were properly classified as overtime-exempt (as "administrators," outside salespeople, commissioned salespeople, or some combination of exemptions). Although Plaintiffs believe that Sales Representatives' job duties do not qualify them for any of the relevant exemptions, Plaintiffs' Counsel recognizes that each exemption inquiry is highly contextual and that litigation of exemption defenses inherently poses risks. *Id*. Odoo would also dispute the number of hours Sales Representatives claim to have worked. Without contemporaneous records of time worked (which Odoo did not maintain), proving the existence and extent of overtime hours worked would also be an evidentiary challenge. *Id.* ¶ 47.

In sum, although Plaintiffs would dispute each of Odoo's arguments, a class trial, and the formal discovery process to prepare for it would be long, arduous, and risky; and even if Plaintiffs prevailed on each of their claims, they might face a lengthy appeals process. *Id.* ¶ 48. Considering the myriad risks and delay that litigation would entail and based on Plaintiffs' Counsel's experience litigating class actions and employment lawsuits, it is the opinion of Plaintiffs' Counsel that the proposed Settlement is in the best interests of the Eligible Members. *Id*.

### 2.    The Settlement Amount Is Appropriate.

"[P]erhaps the most important factor" courts consider in determining whether to grant preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc*., 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quotation omitted). Here, the monetary relief provides strong value to the Eligible Members.

Eligible Members stand to recover a gross award of approximately $8,182 per Eligible Member, and a net award (after deductions for attorneys' fees and costs, service awards, administration costs, the PAGA fund) of approximately $4,997 per Eligible Member. Stewart Decl. ¶ 25. This equates to $67.75 net per workweek. *Id*. This is a substantial portion of the unpaid wages and other damages Eligible Members could have recovered at trial, as described below. Plaintiffs' counsel used Odoo's payroll records to calculate actual damages for each Eligible Member and arrive at the following estimated exposure for each claim. *Id.* ¶ 31.

### a.    Recovery for Non-PAGA Claims

Unpaid Overtime and Interest. Plaintiffs' Counsel estimated overtime damages based on five hours of unpaid overtime per Eligible Member, assuming they worked overtime in 90% of workweeks (to account for periods of vacations, leave, and other days off). Odoo did not maintain records of Eligible Members' work hours or breaks, so Plaintiffs estimated the average overtime hours per week based on interviews with Plaintiffs and Plaintiffs' observations of their co-workers. Plaintiffs calculated exposure using the workweek cap of 40,565.8 workweeks. Accordingly, Plaintiffs estimated a total exposure of approximately **$10,932,442** in unpaid overtime wages plus interest. *Id*. ¶ 32.

FLSA Liquidated Damages. Unless it can show a good faith defense, an employer who violates the FLSA is liable to employees for liquidated damages equal to the unpaid overtime wages. 29 U.S.C. §§ 216(b), 260. Liquidated damages are also available under the N.Y.L.L. N.Y.L.L. § 198(1-a). Here, based on the assumptions above, the Settlement Class could have recovered **$8,471,402** in liquidated damages (an amount equal to the unpaid wages for the workweeks within the three-year FLSA period for California Class Members and the six-year period for New York Class Members) if Plaintiffs succeeded in rebutting Odoo's good faith defense. *Id*. ¶ 33.

Waiting Time Penalties. Labor Code § 203 provides a penalty of up to thirty days' pay where an employer willfully fails to pay an employee all owed wages at the time of separation.

Using an average 8-hour day, and the 30-day penalty, Plaintiffs' Counsel estimated waiting time penalties as approximately **$1,861,016**. *Id*. ¶ 34.

Wage Statement and Wage Notice Penalties.  Labor Code § 226(e)(1) provides statutory penalties in the amount of $50 for the initial pay period and $100 for each subsequent pay period, up to a maximum of $4,000 where an employer knowingly and intentionally fails to provide an accurate wage statement to an employee.  Here, the California Class could have recovered **$707,700** in wage statement penalties.  Stewart Decl. ¶ 35.  In New York, the penalty for failing to provide an accurate wage statement is $250 for each work day that Odoo failed to provide them with accurate wage statements, or a total of up to $5,000 per employee.  *See* N.Y.L.L. §§ 195(3), 198(1-d).  The New York Class could have recovered **$594,000** in wage statement penalties.  Stewart Decl. ¶ 35.  New York also has a penalty provision for failure to provide wage notices, which provides a penalty of $50 per day, or a total of up to $5,000 per employee.  *See* N.Y.L.L. §§ 195(1), 198(1-b).  The New York Class could have recovered **$564,750** in wage notice penalties.  Stewart Decl. ¶ 35.

Unreimbursed Expenses.  Plaintiffs allege that Odoo failed to reimburse California Class Members for a reasonable percentage of their home internet, in violation of Labor Code § 2802.  Plaintiffs estimate the exposure as **$202,000**, assuming that California Class Members incurred $50 per month in home internet bills, and used 50% of their home internet for business purposes.  This may be an overestimate, because Plaintiffs calculated the exposure for the full liability period, but the claim may be weaker in non-COVID time periods, when Class Members were permitted to work in the office.  Stewart Decl. ¶ 36.

In sum, the maximum total exposure for Eligible Members' wage and hour claims, excluding PAGA claims, is approximately **$23,333,310**.  The Total Settlement Amount (minus the $150,000 PAGA Fund) thus represents a 18.6% recovery of the total maximum exposure.  Stewart Decl. ¶ 37.  This recovery is substantial given the risks of prevailing on liability and recovering the maximum possible damages and penalties, as described above.  Thus, the settlement is well within the range of reasonableness.  *See, e.g., In re Mego Fin. Corp. Sec.*

*Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a gross recovery of approximately one sixth (16.67%) of the potential recovery adequate in light of litigation risks); *Villegas v. J.P. Morgan Chase & Co.*, No. 09 Civ. 00261, 2012 U.S. Dist. LEXIS 16670, at *17 (N.D. Cal. Nov. 20, 2012) (preliminarily approving a settlement where the gross amount represented approximately 15% of the potential recovery).

This recovery is particularly reasonable given that well over half of the Eligible Members, including Plaintiff Rivas, were subject to arbitration agreements. The allocation formula, awarding 1 point per Eligible Workweek to arbitration bound workweeks ("Arbitration Workweeks"), and 1.5 points per Eligible Workweek to workweeks not bound by arbitration, is also reasonable, as it reflects the higher risks for arbitration bound Eligible Members, who would likely be required to participate in intensive individual arbitrations to obtain recovery. Stewart Decl. ¶ 38.

Plaintiffs' Counsel have litigated similar overtime claims on behalf of sales representatives where a large number of the class members were subject to arbitration agreements, and provide two comparators. *See District Guidance* § 11.

| Case Name | *Aris Cienega & Zakeia Hampton v. Echo Global Logistics, Inc.*, No. 1:22-Civ-00644, N.D. Ill. | *Cody Wilson et al. v. Flock Freight, Inc.*, No. CIV SB 2200575, Cal. Super., San Bernardino Cnty. |
|---|---|---|
| Released Claims | Sales Representatives overtime and related claims under FLSA, Illinois and, California law. | Sales Representatives overtime and related claims under FLSA and California law. |
| Methods of Notice | mail, email, and text message | mail, email, and text message |
| Total Settlement Fund | $6,575,000 | $1,850,000 |
| Class Size | 2,690 | 276 |
| # to whom notice sent | 2,651 | 276 |
| Claim forms | Not required | Not required |
| Average Gross Recovery | $2,444.24 | $6,702.90 |
| Average Net Recovery | $1,578.69 | $3,938 |
| Amount to Cy Pres | $65,951.27 | $17,567.32 |

19

| Attorneys' Fees and Costs | One-third of the common fund ($2,191,667.67) + $54,137.22 for costs | One-third of the common fund ($616,666.67) + $18,931.88 for costs |
|---|---|---|
| Administration Costs | $32,500 | $14,750 |
| Total Exposure | Approx. $24.35 million for unpaid wages only, using fluctuating workweek method of calculating overtime | $8,648,758.43 |

The average recovery here of $8,182 gross and $4,997 net per Eligible Member compares favorably to other cases and is a strong result supporting approval. While it is always true that a larger settlement amount is theoretically possible, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 624 (9th Cir. 1982)). Given the estimated total exposure and the risks that Plaintiffs would face in attempting to win on all arguments, the $4,500,000 Total Settlement Amount is a strong recovery.

### b. The PAGA Settlement Amount Is Reasonable.

Finally, the PAGA allocation of $150,000 is reasonable. This represents 3.33% of the $4,500,000 Total Settlement Amount.[10] Stewart Decl. ¶ 39. Odoo's maximum penalties for the 8,318 pay periods could be calculated as $4,169,700 assuming that the penalties for the PAGA violations (overtime, timely pay during employment and upon separation, improper wage statements, and unreimbursed expenses) could be stacked and are calculated as initial violations. The proposed PAGA settlement amount of $150,000 thus represents 3.6% of the exposure. Stewart Decl. ¶ 40. This recovery is reasonable because of courts' discretion to reduce PAGA penalties (Cal. Lab. Code § 2699(e)(2)) and well within the range that courts routinely approve. *See, e.g.*, *Billups-Larkin v. Aramark Servs., Inc.*, No. 21 Civ. 6852 , 2023 U.S. Dist. LEXIS 122756, *9 (N.D. Cal. July 17, 2023) (finding PAGA payment that was approximately 1.9% of

---

[10] Courts that look at the proportion of the PAGA settlement to the overall settlement recovery have approved similar proportionate recoveries. *See, e.g.*, *Van Kempen v. Matheson Tri-Gas, Inc.*, No, 15 Civ. 66079660 (HSG), 2017 U.S. Dist. LEXIS 137182, at *6, *29-30 (N.D. Cal. Aug. 25, 2017) (1.4%).

20

the total potential value of the PAGA claim reasonable); *McLeod v. Bank of Am., N.A.*, No. 16 Civ. 3294 , 2018 U.S. Dist. LEXIS 195314, at *4 (N.D. Cal. Nov. 14, 2018) (finding approximately 1.1% of estimated PAGA exposure to be adequate).

Given these considerations, Plaintiffs submit that the $4,500,000 Total Settlement Amount, including the $150,000 PAGA amount, is fair, reasonable, and adequate, and that the Settlement is in the best interest of the Class and Collective.

### 3.    The Extent of Discovery Supports Settlement.

A settlement requires adequate discovery.  The touchstone of this analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery.  *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney*, 151 F.3d at 1239).  Here, Plaintiffs investigated these claims carefully and zealously litigated them, efficiently moving into settlement discussions, supported by informal and initial formal discovery, to reach a reasonable settlement. Specifically, Odoo produced relevant policies and payroll data regarding Sales Representatives, and the parties exchanged detailed mediation statements.  Plaintiffs served written discovery and the parties engaged in a thorough Fed. R. Civ. P. Rule 26(f) conference.  Stewart Decl. ¶ 49. Thus, the Settlement results from Plaintiffs' Counsel's informed judgment about the strengths and weaknesses of the claims.

### 4.    Counsel's Experience and Views Support Approval.

"'Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *DirecTV, Inc.*, 221 F.R.D. at 528. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  Plaintiffs' Counsel are some of the most experienced class action litigators in the country.  Stewart Decl. ¶ 11.  Plaintiffs' Counsel specialize in prosecuting complex employment class actions, and over many years have successfully – and unsuccessfully – litigated many such cases, putting them in a

1  strong position to weigh the strengths and weaknesses of Plaintiffs' claims and Odoo's defenses.

2  *Id.* ¶ 48.  Based on their extensive experience, Plaintiffs' Counsel believe that the settlement is

3  fair, reasonable, and adequate.  *Id.*

4        **C.**     **The Court Should Approve the FLSA Settlement.**

5          **1.**      **Court Approval Is Required.**

6       Longstanding Supreme Court and circuit court precedent holds that employees may only

7  settle their FLSA claims under Department of Labor supervision or through a court-approved

8  stipulated judgment.  *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353

9  (11th Cir. 1982).  *Lynn's Foods* relied on earlier Supreme Court decisions which held that

10  private settlements of FLSA claims are impermissible.  *See id.* at 1354 (citing *Brooklyn Sav.*

11  *Bank v. O'Neil*, 324 U.S. 697 (1945), and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)).  In

12  *Seminiano v. Xyris Enterprise*, the Ninth Circuit endorsed the *Lynn's Foods* rule.  602 F. App'x

13  682, 683 (9th Cir. 2015) ("FLSA claims may not be settled without approval of either the

14  Secretary of Labor or a district court.").  Thus, California federal district courts consistently hold

15  that judicial approval is required for settlement of FLSA claims.  *See, e.g.*, *Gutierrez v. New*

16  *Hope Harvesting, LLC.*, No. 19 Civ. 7077, 2024 U.S. Dist. LEXIS 76786, at *3-4 (C.D. Cal.

17  Apr. 26, 2024); *Quiruz v. Specialty Commodities*, No. 17 Civ. 3300, 2020 U.S. Dist. LEXIS

18  209498, at *6 (N.D. Cal. Nov. 9, 2020).

19          **2.**      **The FLSA Settlement Should Be Approved.**

20       Courts in this district determine whether the named plaintiff is "similarly situated" to the

21  individuals in the collective and then determine whether the settlement constitutes "a fair and

22  reasonable resolution of a bona fide dispute." *Quiruz*, 2020 U.S. Dist. LEXIS 209498, at *7

23  (citation omitted).  "[T]he factors that courts consider when evaluating a collective action

24  settlement are essentially the same as those that courts consider when evaluating a [class action]

25  settlement under Rule 23(e)."  *Id.* (citation omitted and alteration in the original).

26       First, the collective has already been conditionally certified.  *See* ECF No. 33.  Plaintiffs

27  are similarly situated when they share "a similar issue of law or fact material to the disposition of

28   

their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018).

Plaintiffs have demonstrated that conditional certification was appropriate by identifying a

common policy that classifies them as exempt from overtime under FLSA. *See Karl v. Zimmer*

*Biomet Holdings, Inc.*, No. 18 Civ. 4176, 2019 U.S. Dist. LEXIS 111705, at *7 (N.D. Cal. July

2, 2019) (sales representatives similarly situated where they alleged they were victims of a

common misclassification policy).

Second, for the same reasons that the Court should approve the Rule 23 class settlement,

the Court should approve the FLSA settlement. *See supra*, Section IV.B.

### 3. The Court Should Approve the Proposed Settlement Administrator.

The parties have agreed on ILYM, a well-regarded settlement administrator, to be the

Settlement Administrator after soliciting bids from four experienced and reputable

administrators. Stewart Decl. ¶ 50. Over the last two years, ILYM has administered 14 other

settlements for Plaintiffs' Counsel. ILYM Decl ¶ 2; *District Guidance* § 2(a).

With this Motion, Plaintiffs provide a declaration and supporting exhibits from ILYM

regarding its procedures for handling class member data. ILYM Decl. ¶ 3 & Ex. B. ILYM has

confirmed that it takes responsibility for potential errors and confirms it maintains insurance for

such instances. *Id.* ILYM's anticipated costs of approximately $16,750 are modest both in

absolute terms and relative to the value of the Settlement. Odoo will pay the settlement

administration costs, which will be deducted from the Total Settlement Amount. Stewart Decl.

Ex. 1 § 3.2.

### D. The Court Should Approve the Proposed Notices and Administration Plan.

The proposed Notices are the "best notice . . . practicable under the circumstances. Fed.

R. Civ. P. 23(c)(2)(B). The proposed Notices are consistent with the *District Guidance* and

modern best practices set forth by the Federal Judicial Center.[11] Stewart Decl., Ex. 1, Ex. A

(Notices). The notice must include the following in "easily understood language":

---

[11] *See Illustrative Forms of Class Action Notices: Overview*, Fed. Judicial Ctr.,
https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last
visited May 31, 2024).

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Notice is satisfactory if it "generally describes the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (citations omitted). The parties' proposed Notices include all required information. Stewart Decl., Ex. 1, Ex. A (Notices).

The proposed Notices provide information regarding the claims and the settlement agreement, the rights and options for Eligible Members, and how they can obtain additional information. *Id.* The Notice to Class Members explains that they may object or opt out and that Class Members who do not timely opt out will be Class Members for settlement purposes and will release the Released Class Claims, and that if they cash their Settlement Check or elect Electronic Payment, they will also release the Released Collective Claims. The Notice to Putative Collective Members explains that if they cash their Settlement Check or elect Electronic Payment, they will release the Released Collective Claims. *Id.* The scope of the releases is the same as the claims in the SAC. *See District Guidance* § 1(b). The proposed Notices state that Class Members who affirmatively opt out and Putative Collective Members who do not cash a Settlement Check or elect Electronic Payment will not receive a settlement payment, but also will not be subject to any release of claims. Stewart Decl., Ex. 1, Ex. A (Notices). The proposed Notices provide instructions for accessing case documents on the docket and contain contact information for Plaintiffs' Counsel, facilitating Eligible Members' abilities to ask questions and learn information. *See District Guidance* § 3(c). The Notices explain how Eligible Members may elect to receive their payment electronically and include a link to the website where they may select their preferred payment options. Stewart Decl., Ex. 1, Ex. A (Notices). The Notices

will also list the date of the final approval hearing, and that it may be subject to change without further notice. *Id.*; *District Guidance* § 3(d).

The parties have agreed, subject to Court approval, to have the Settlement Administrator send the proposed Notice via text, email, and First-Class U.S. Mail to the last-known addresses and phone numbers of the Eligible Members as included in the Class List. Stewart Decl. Ex. 1, § 19(a). Returned Notices will be skip traced twice to get an updated address and then re-mailed or re-sent by other relevant means. *Id.* §§ 3.3, 4.4.

Accordingly, the proposed notice plan complies with Rule 23 and due process.

## V. <u>A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.</u>

Plaintiffs, after consultation with Defendants, propose that the Court adopt the following schedule for effectuating the various steps in the settlement approval process described above.

| Event | Proposed Date |
|---|---|
| Preliminary Approval Hearing | July 9, 2024 |
| Entry of Preliminary Approval Order (assumed for purposes of calculating subsequent dates) | July 9, 2024 |
| Defendants to provide Class List to Administrator | July 16, 2024 |
| Notice disseminated by Settlement Administrator | July 30, 2024 |
| Motion for attorneys' fees, costs, and service awards | August 24, 2024 |
| Deadline for exclusions and objections, except as extended for remailings | September 28, 2024 |
| Final Approval Motion | October 8, 2024 |
| Final Approval Hearing | November 12, 2024 |

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify the Classes; (2) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23 and Section 216(b) of the FLSA; (3) appoint Plaintiffs as the Class Representatives, their counsel as Class Counsel, and ILYM as Settlement Administrator; (4) set appropriate deadlines; (5) approve the proposed class notice and forms; and (6) schedule a final approval hearing.

Respectfully submitted,

Dated: June 4, 2024          By:    */s/ Jahan C. Sagafi*

Jahan C. Sagafi (SBN 224887)
Molly J. Frandsen (SBN 320094)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Tel.: (415) 638-8800
Fax: (415) 638-8810
Email: jsagafi@outtengolden.com
Email: mfrandsen@outtengolden.com

Melissa L. Stewart*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.: (212) 245-1000
Fax: (646) 509-2060
Email: mstewart@outtengolden.com
*Attorneys for Plaintiffs and Proposed Class and Collective Members and Aggrieved Employees*

 *Admitted *pro hac vice*

26