Jahan C. Sagafi (SBN 224887)
Molly J. Frandsen (SBN 320094)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
E-Mail: jsagafi@outtengolden.com
E-Mail: mfrandsen@outtengolden.com

Melissa L. Stewart*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
E-Mail: mstewart@outtengolden.com

*admitted *pro hac vice*

*Attorneys for Plaintiffs and the Proposed Class and
Collective Members and Aggrieved Employees*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR KAYED, JESUS PRADO, SPENCER CARR, and ALONZO RIVAS individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ODOO, INC. and ODOO, S.A.,<br><br>Defendants. | Case No. 3:23-cv-03728-LJC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>Judge: Honorable: Lisa J. Cisneros<br>Courtroom G – 15th Floor<br><br>Hearing Date: November 12, 2024<br>Hearing Time: 10:30 AM<br><br>Complaint Filed:  July 27, 2023 |

## <u>NOTICE OF UNOPPOSED MOTION</u>

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE that on November 12, 2024, at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom G – 15th Floor of this Court's San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Omar Kayed, Jesus Prado, Spencer Carr, and Alonzo Rivas ("Plaintiffs"), will, and hereby do, move this Court for an order: (1) granting, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, final approval of the parties' proposed class action settlement ("Settlement"), and entry of judgment in accordance with the Settlement; and (2) granting, pursuant to Rules 23(a) and 23(b)(3), final class certification of the Settlement Class conditionally certified in the Preliminary Approval Order.  ECF No. 60.

Plaintiffs make this motion on the grounds that the Settlement is fair, adequate, and reasonable, was reached through arm's-length negotiations with two experienced mediators and has drawn a highly favorable response from the Class, as described in the attached memorandum. The Settlement provides significant monetary relief to the Settlement Class – the average net settlement award per Class Member is approximately $4,825.02 (or $69.02 net average per workweek).

The Court preliminarily approved the Settlement Agreement on July 17, 2024.  ECF No. 60.  Since then, Notice was provided to the settlement Class Members.  No Class Member has opted out of the settlement and no Class Member has objected.  This unopposed motion is based upon this notice of motion; the memorandum in support of the motion, the accompanying declaration of Jahan C. Sagafi ("Sagafi Decl."); the Declaration of Makenna Snow for ILYM Group (Ex. 2 "ILYM Decl."); the Court's record of this action; all matters of which the Court may take notice; and any oral evidence presented at the final approval hearing on the motion.

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT BACKGROUND ........................................................................... 2

     A.     The Parties Efficiently Achieved a Settlement Through Arm's-length Negotiations, and the Court Granted Preliminary Approval. ......................................... 2

     B.     Settlement Overview .................................................................................... 3

          1.     The $4,637,110 in Monetary Relief Constitutes an Excellent Result for the Class Members. ................................................................. 3

          2.     The Settlement Class Includes Sales Representatives in California and New York. ................................................................................ 4

     C.     The Notice and Claims Process Comports with Due Process and Best Practices and Has Been Implemented Properly. ........................................................ 5

     D.     The Parties Complied with Their Notice Obligations Under CAFA and PAGA. .................................................................................................. 6

III.    ARGUMENT ...................................................................................................... 7

     A.     The Best Practicable Notice of Settlement Has Been Provided to the Class. ................................................................................................... 7

     B.     Final Certification of the Rule 23 Class and Collective is Proper. .......................... 8

     C.     Final Approval Should Be Granted Because the Settlement Is Fair, Adequate, and Reasonable and Appropriate under Rule 23 ................................... 9

          1.     Plaintiffs' Case Faced Hurdles on Liability and Class Certification. ....... 10

          2.     The Settlement Amount Provides Substantial Relief for Class Members. ................................................................................. 10

          3.     The Extent of Discovery Supports Settlement. ........................................ 12

          4.     Counsel's Experience and Views Support Approval. ............................... 12

          5.     Class Members Have Reacted Positively to the Settlement. .................... 13

6.     The Requirements for Approval under Rule 23(e)(2) Are Met. ............... 13

D.    The Court Should Approve the FLSA Settlement.................................................. 15

IV.    CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Bert v. AK Steel Corp.*,
   No. 12 Civ. 467, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio Oct. 23, 2008)........................ 14

*Betancourt v. Advantage Human Resourcing, Inc.*,
   No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361 (N.D. Cal. Jan. 28, 2016)........................ 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)............................................................................ 14

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017)........................................................................... 7

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010).................................................................. 10

*Churchill Village, LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)............................................................................ 7

*Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 12, 13

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016)................................................................. 10

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
   213 F.3d 454 (9th Cir. 2000).................................................................... , 12

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ....................................................................................... 7

*Fernandez v. Victoria Secret Stores, LLC*,
   No. 06 Civ. 4149, 2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008)........................ 14

*Ford v. CEC Entm't Inc.*,
   No. 14 Civ. 677, 2015 U.S. Dist. LEXIS 191966 (S.D. Cal. Dec. 14, 2015) .......................... 8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)....................................................................... 9, 14

*In re Mego Fin. Corp. Sec. Litig.,*,
   213 F.3d 454, 459 (9th Cir. 2000)................................................................. 11,12

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*,
    112 Cal. Rptr. 3d 324 (Cal. Ct. App. 2010) ............................................................. 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523, 528 (C.D. Cal. 2004) ..................................................................... 12

*Quiruz v. Specialty Commodities*,
    No. 17 Civ. 3300, 2020 U.S. Dist. LEXIS 209498 (N.D. Cal. Nov. 9, 2020) ......... 15

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................... 9, 12, 14

*Roes v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019) ........................................................................... 10, 14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................................... 9

*Tijero v. Aaron Bros., Inc.*,
    301 F.R.D. 314 (N.D. Cal. 2013) ............................................................................. 14

*Villegas v. J.P. Morgan Chase & Co.*,
    No. 09 Civ. 00261, 2012 U.S. Dist. LEXIS 166704 (N.D. Cal. Nov. 20, 2012) ..... 11

**STATUTES**

28 U.S.C. § 1715 ............................................................................................................ 6, 7

**RULES**

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

I.    **INTRODUCTION**

Plaintiffs Omar Kayed, Jesus Prado, Spencer Carr, and Alonzo Rivas seek final approval of a settlement of this class and PAGA action on behalf of 598 Sales Representatives employed by Defendants Odoo, Inc. and Odoo, S.A. ("Defendants" or "Odoo").  This Settlement provides a non-reversionary, common fund of $4,637,110.57[1] for Class Members'[2] benefit (inclusive of Class Member settlement awards, settlement administration costs, attorneys' fees and costs, service awards, and PAGA Payment) (the "Total Settlement Amount").  The Settlement will resolve all claims against Defendants in Plaintiffs' Second Amended Complaint ("SAC").  The Settlement provides significant monetary relief to the Settlement Class – the average net settlement award per Class Member is approximately $4,825.02 (or $69.02 net average per workweek) – and the proposed Settlement satisfies all the criteria for final approval.  Declaration of Jahan C. Sagafi in Support of Motion for Final Approval ("Sagafi Decl.") ¶ 14; Ex. 2 (Declaration of Makenna Snow ("ILYM Decl.") ¶ 24.  Accordingly, Plaintiffs respectfully request that the Court: (1) grant final approval of the Revised Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1 to the Sagafi Declaration; and (2) finally certify the Settlement Class and Collective for settlement purposes.

On July 17, 2024, the Court took the first step in the settlement approval process by preliminarily approving the Settlement Agreement as fair, adequate, and reasonable; conditionally certifying the Class and Collective for settlement purposes; appointing Outten &

---

[1] Plaintiffs negotiated a $4,500,000 settlement along with a workweek cap and escalator provision that provided that if the workweeks exceeded the cap, the settlement amount would increase.  Because, as described below in Section II.B.1, Odoo elected to pay more beyond the workweek cap, and because additional Class Members were added to the case, the settlement amount is higher than the number initially agreed to.

[2] In Plaintiffs' Motion for Preliminary Approval of Settlement, Eligible Members were defined as: (a) "Class Members," where "Class Members" meant those individuals employed by Odoo as Sales Representatives in California or in New York in the relevant time periods, (b) Putative Collective Members, defined as Sales Representatives who work or worked for Odoo nationwide except in California or New York, and (c) "PAGA Members."  The Class List ultimately included only individuals who worked in New York or California and thus there were no Putative Collective Members, and all PAGA Members are also California Class Members.  Therefore, this Motion refers to "Class Members" instead of Eligible Members.

Golden as Class Counsel; directing that notice be sent to Class Members; and setting a date for the final Fairness Hearing.  ECF No. 60.  Class Members have been notified of all terms of the Settlement Agreement including the right to opt out or object.  Ex. 2 (ILYM Decl.) ¶¶ 9-10 & Ex. A (Notice).  To date, no Class Members have filed an objection, and none have requested to exclude themselves.  *Id.* ¶¶ 18-19.  For the reasons stated below, the Court should grant final approval.

## II.    RELEVANT BACKGROUND

As described in Plaintiffs' Motion for Preliminary Approval, ECF No. 53, and Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards, ECF No. 62, which are incorporated by reference, Class Counsel has dedicated numerous hours to this litigation and engaged in extensive arm's-length settlement negotiations, resulting in significant relief to the Class.[3]  *See* Sagafi Decl. ¶ 5.  The Settlement achieved by Class Counsel is procedurally sound: (a) having been reached after two years of litigation and (b) and after two mediation sessions, overseen by highly experienced mediators with particular expertise in complex class actions.  *Id.* ¶ 18.

### A.    The Parties Efficiently Achieved a Settlement Through Arm's-length Negotiations, and the Court Granted Preliminary Approval.

On August 25, 2022, in an effort to explore a potential pre-litigation resolution, Plaintiffs informed Odoo of their claims and invited the company to consider the possibility of settlement discussions.  Sagafi Decl. ¶ 6.  The parties subsequently agreed to explore pre-suit mediation and began extended settlement discussions.  *Id.*  Prior to mediation, the parties engaged in informal discovery.  Odoo produced Plaintiffs' personnel files, Odoo's policies, and payroll data for Plaintiffs and Sales Representatives.  The parties also drafted and exchanged mediation briefs setting forth their respective positions as to liability, class and collective certification, and damages.  *Id*. ¶ 7.

---

[3] A full discussion of the relevant factual and procedural background is set forth in Plaintiffs' Motion for Preliminary Approval, ECF No. 53, and Plaintiffs' Motion for Attorneys' Fees and Costs and Service Awards, ECF No. 62.

On July 14, 2023, the parties mediated this case with the assistance of experienced mediator, the Honorable Brian C. Walsh (retired), but were not able to reach a resolution. *Id.* ¶ 8. On July 27, 2023, Plaintiffs filed the Complaint. ECF No. 1. Plaintiffs filed a PAGA notice on July 27, 2023, and a First Amended Complaint on October 3, 2023, to add a PAGA Claim. Sagafi Decl. ¶ 9; ECF No. 27. The operative complaint is the SAC, which added Plaintiff Rivas as a Plaintiff. ECF No. 50. The parties litigated conditional certification, which the Court granted, ECF No. 33, and had begun to engage in formal discovery before they returned to settlement discussions. *Id.* The parties participated in a second full-day mediation session on December 8, 2023, with the assistance of experienced mediator Louis Marlin, and accepted a mediators' proposal on December 29, 2023, with a more detailed term sheet negotiated and executed on January 22, 2024. *Id.* ¶ 10. The parties finalized and fully executed the Settlement Agreement on May 14, 2024. *Id.* ¶ 11

On July 9, 2024, the Court held a hearing on the Motion for Preliminary Approval, and preliminarily approved the Settlement and certified the Settlement Class in an order dated July 17, 2024. ECF No. 60.

To effectuate the Settlement, Class Counsel reviewed bids from several settlement administrators before agreeing to ILYM as the Settlement Administrator. Sagafi Decl. ¶ 12. Together with the Settlement Administrator, the parties helped finalize the accompanying mail, email, and text notice documents and Payment Forms and instructions. Ex. 2 (ILYM Decl.) ¶ 12.

### B. Settlement Overview

#### 1. The $4,637,110 in Monetary Relief Constitutes an Excellent Result for the Class Members.

The Settlement's plan of allocation fairly and adequately compensates Class Members. While the parties had agreed to a $4,500,000 Total Settlement Amount, the size of the fund has increased for two reasons. First, the Settlement Agreement provides that should the total number of workweeks through the earlier of March 7, 2024 or the date of preliminary approval increase by more than 10% (i.e., above 40,565.8 workweeks), Odoo would have the option to either increase the Total Settlement Amount by a proportionate additional amount or

elect to shorten the Release Date to the date corresponding to the accrual of 40,565.8 Eligible Workweeks.  Ex. 1 (Settlement Agreement) § 9.1(b).  The Class List included 40,683 workweeks through March 7, 2024, which was 117.2 more workweeks than the workweek cap.  Ex. 2 (ILYM Decl.) ¶ 6.  Odoo elected to increase the Total Settlement Amount so that the Release Date would be March 7, 2024, and include the 117.2 additional workweeks, which increased the Total Settlement Amount by $13,001.10, to $4,513,001.10.  *Id.*  Second, the Settlement Agreement provides a process by which Class Members (or individuals inadvertently excluded from the Class List) can dispute Odoo's records and/or the calculation of their settlement payment.  Ex. 1 (Settlement Agreement) § 9.8.  Per the dispute process, and through Defendants' identification of a few individuals inadvertently excluded from the Class List, twelve additional Class Members were added to the Class List.  Ex. 2 (ILYM Decl.) ¶ 15.   This increased the number of workweeks over the workweek cap to 1,236 additional workweeks, and increased the total Settlement Amount to $4,637,110.57.  *Id.* ¶¶ 21-22.

This $4,637,110.57 Total Settlement Amount will cover (1) Court-approved attorneys' fees of up to one-third of the original Total Settlement Amount ($1,500,000) and actual litigation costs of Class Counsel up to a total of $30,000, (2) Service Awards of $15,000 each for Plaintiff Omar Kayed, Jesus Prado, and Spencer Carr, and $10,000 for Plaintiff Alonzo Rivas, (3) the settlement administration costs not to exceed $16,750, and (4) a Private Attorneys General Act Fund ("PAGA Fund") of $150,000 (allocated 25% to PAGA Members and 75% to the California Labor and Workforce Development Agency ("LWDA").  Ex. 1 (Settlement Agreement) §§ 1.61; 1.34, 1.36; Ex. 2 (ILYM Decl.) ¶ 24.  The Settlement resolves the claims of the Class Members and creates a non-reversionary Fund.  The average payment net payment for Class Members is $4,825.02 with the highest payment of $24,025.36.  *Id.*  The Total Settlement Amount does not include the employer's portion of payroll taxes, which will be paid separately by the company.  Ex. 1 (Settlement Agreement) § 1.61.

## 2. The Settlement Class Includes Sales Representatives in California and New York.

For settlement purposes only and consistent with the parties' Settlement Agreement,

Plaintiffs seek final certification of a Settlement Class including all Class Members who did not submit timely Opt-Out Statements.  "Class Members" include (i) "California Class Members" meaning Sales Representatives employed by Odoo in California between October 21, 2018, and March 7, 2024, and (ii) "New York Class Members" meaning Sales Representatives employed by Odoo between October 21, 2016, and March 7, 2024.   In its order granting preliminary approval of the settlement, the Court conditionally certified the class with this definition.  ECF No. 60 at 2-3.  The settlement also covers PAGA Members, defined as individuals employed by Odoo as Sales Representatives in California from October 21, 2021, to March 7, 2024.

### C.    The Notice and Claims Process Comports with Due Process and Best Practices and Has Been Implemented Properly.

The parties have followed the Court-approved notice plan, as set forth in the Settlement Agreement and the Court's Preliminary Approval Order.  Ex. 1 (Settlement Agreement) §§ 1.9, 4.1, 4.3, 4.4, 1.4, 5.1, 6.1; ECF No. 60 at 4.  The notice plan was thorough and constitutes the best notice practicable.  *See* Fed. R. Civ. P. 23(c)(2)(B).

Following preliminary approval, on August 5, 2024, Odoo sent ILYM the Class List, which contained mailing addresses, email addresses, and phone numbers for 586 Class Members.  Ex. 2 (ILYM Decl.) ¶ 5.

On August 7, 2024, a link to a secure website was set up for Class Members to access the Notice, information about deadlines and other relevant dates, key pleadings, the Settlement Agreement, and Class Counsel's contact information.  *Id.* ¶ 8.  A QR Code and link to this website was included in the Class Notice.  *Id.*  ILYM has also set up a toll-free phone number to field questions from Class Members.  *Id.* ¶ 8.  Class Counsel have also fielded 46 inquiries (phone calls or emails) from Class Members.  Sagafi Decl. ¶ 13.

On August 8, 2024, ILYM provided notice to Class Members via three methods: email, text message, and mail.  Ex. 2 (ILYM Decl.)  ¶¶ 9-10.  Prior to mailing the Notices, all addresses were verified through the National Change of Address database.  *Id.* ¶ 7.  Following delivery, 36 Notices were returned as undeliverable.  *Id.* ¶ 11.  ILYM performed a computerized skip trace on the 36 returned Notices in an effort to obtain updated addresses for re-mailing, and remailed 18

Notices. *Id.* ¶ 12. Of the remaining 18 undeliverable Notices, none of these Class Members had an undeliverable email address. *Id.* ¶ 13. Therefore, none of the Class Members had both an undeliverable emailed and mailed Notice. *Id.*

On September 20, 2024, ILYM sent Notices to the twelve individuals inadvertently excluded from the class list who ILYM determined to be Class Members. *Id.* ¶¶ 15-17.

The Notices explain how Class Members can elect to receive their payment electronically instead of by mailed Settlement Check and include a link to the website where they may select their preferred payment options. As of October 7, 2024, ILYM has received 254 Payment Forms. *Id.* ¶ 20.

The deadline for Class Members to object or opt-out of the settlement was October 7, 2024. *Id.* ¶ 19. For Class Members for Class Members who were remailed their Notice, this deadline is October 27, 2024. For the twelve individuals added to the Class List, the deadline to object or opt-out is November 11, 2024. *Id.* As of this date, no Class Member has opted out of or objected to the Settlement. *Id.* ¶¶ 18-19. Of those to whom Notice was remailed with an extended Bar Date later than October 7, 2024, only 14 have not submitted Electronic Payment forms, and of the twelve inadvertently excluded from the Class to whom Notice was remailed, only three have not submitted electronic payment forms. *Id.* ¶¶ 14 ,17. On September 30, 2024, ILYM Group was contacted by an additional Self-ID who was not on the Class List and is working with the individual and the parties to determine whether the individual should have been included on the Class List. *Id.* ¶ 16.

Plaintiffs will update this submission through their reply motion in support of final approval of the Settlement filed at least two weeks before the Final Approval Hearing. Sagafi Decl. ¶ 22.

### D. The Parties Complied with Their Notice Obligations Under CAFA and PAGA.

In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, counsel for Odoo served CAFA notices on the relevant federal and state attorneys general on June 14, 2024. ECF No. 57. The Fairness Hearing, set for November 12, 2024, is being held more than

90 days after the issuance of the CAFA notice, such that the final approval order may be entered in accordance with CAFA's notice requirements if the Court finds that all other requirements are met.  28 U.S.C. § 1715(d).

Plaintiffs notified the LWDA of the proposed settlement of Plaintiffs' PAGA claim on June 4, 2024 , the date that Plaintiffs submitted the Preliminary Approval Motion to the Court.  Sagafi Decl. ¶ 21.  Plaintiffs will upload any judgment from this Court approving the settlement via the LWDA's online portal.  *Id.*

## III.    ARGUMENT

### A.    The Best Practicable Notice of Settlement Has Been Provided to the Class.

The notice here was the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B) and was provided "in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation and quotation marks omitted).  Notice mailed to each class member "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  "'[T]he rule does not insist on actual notice to all class members in all cases' and 'recognizes it might be *impossible* to identify some class members for purposes of actual notice.'"  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). For any class certified under Rule 23(b)(3), the notice must inform class members "that the court will exclude from the class any member who requests exclusion," stating "the time and manner for requesting exclusion."  Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).

The content of the proposed Notice was appropriate because it provided sufficient information for Class Members to decide whether to participate in, object to, or opt out of the Settlement.  It provided: (1) a brief explanation of the case, (2) the material terms of the settlement, (3) the proposed fees and costs of Class Counsel and settlement administration,

(4) the proposed Service Awards to Plaintiffs, (5) that Class Members could opt out of or object to the Settlement (and instructions on how to do so), (5) a statement that the Settlement will bind all Class Members who do not request exclusion, (6) a statement that any Class Member who does not request exclusion may, if she so desires, enter an appearance through counsel, (7) details about the Court hearing on settlement approval and the opportunity to object; and (8) how Class Members could obtain additional information, including documents related to the settlement. Ex. 2 (ILYM Decl.) ¶ 8 & Ex. A (Notice).

As described above, the notice process included emailing, texting, and mailing of Notices to Class Members. *Id.* ¶¶ 9-10. ILYM received 36 Notices returned as undeliverable and of these, ILYM was able to locate new addresses for 18 through skip tracing. *Id.* ¶¶ 11-12. Notices were remailed to the new addresses. As of this date, 18, Notices remain undeliverable. *Id.* ¶ 13. However, of these 18 undeliverable Notices, none of these Class Members had an undeliverable email address; therefore, of the 586 Class Members, none had both an undeliverable emailed and mailed Notice. *Id.*

The parties and the Settlement Administrator have complied with the Court-approved notice plan, as set forth in the Settlement Agreement, and the Court's Preliminary Approval Order. Because Class Members have been given a full and fair opportunity to consider the terms of the proposed settlement and make an informed decision on whether to participate, the Court should find that the notice was adequate and the best practicable. *See Ford v. CEC Entm't Inc.*, No. 14 Civ. 677, 2015 U.S. Dist. LEXIS 191966, at *7-8 (S.D. Cal. Dec. 14, 2015) (finding notice standards satisfied when claims administrator provided notice in accordance with the procedures previously approved by the court in its preliminary approval order).

**B.    Final Certification of the Rule 23 Class and Collective is Proper.**

At the preliminary approval stage, the Court conditionally certified the Settlement Class under Rule 23(a) and 23(b)(3) and the Settlement Collective. ECF No. 60 at 2-3. The Court also conditionally appointed Plaintiffs Kayed, Prado, Carr, and Rivas as Class Representatives, and conditionally appointed Plaintiffs' counsel, Outten & Golden LLP, as Class Counsel. *Id.* at 3.

For the reasons outlined in Plaintiffs' Motion for Preliminary Approval, and the Court's Preliminary Approval Order, the Class, Class Representatives and Class Counsel readily satisfy Rule 23's requirements for settlement purposes, and collective certification is appropriate.  ECF No. 53 at 10-14; ECF No. 60 at 3.  The Court's preliminary certification decisions should now be confirmed as final.

### C.    Final Approval Should Be Granted Because the Settlement Is Fair, Adequate, and Reasonable and Appropriate under Rule 23.

The touchstone for the final approval inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Staton v. Boeing Co.*, 327 F.3d 938, 952, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (internal quotation marks and alterations omitted)).  Pursuant to Rule 23(e)(2), a court must consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . [and] (D) the proposal treats class members equitably to each other."  In analyzing whether class relief is adequate, the court must consider the costs, risks, and delay of trial and appeal; the method of processing class member claims and distributing relief; the terms of any attorneys' fee awards; and any agreement made in connection with the settlement proposal.  Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv); 23(e)(3).

This standard overlaps with the instruction of *Hanlon* to balance the following factors in assessing a proposed class action settlement:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citation omitted); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (same).  The inquiry required upon settlement is heightened where

a case is settled prior to formal class certification.  *See Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (stating that "heightened scrutiny" is required for "class settlements negotiated prior to class certification.")  Here, a rigorous review of the Settlement confirms that it merits final approval, as evidenced by a consideration of the *Hanlon* factors.

       **1.**     **Plaintiffs' Case Faced Hurdles on Liability and Class Certification.**

      "Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'"  *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361, at *10-11 (N.D. Cal. Jan. 28, 2016) (quoting *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851) (N.D. Cal. 2010)).  Plaintiffs faced obstacles to full recovery.  Plaintiffs would have to defeat Odoo's claim that over half of the Class Members were subject to individual arbitration agreements that would foreclose participation in a class or collective action.  While Plaintiffs would challenge the enforceability of these agreements, Class Counsel are experienced class action litigators and recognize the challenges associated with these arguments.  Plaintiffs would also have had to address Odoo's defense that Sales Representatives were properly classified as overtime-exempt (administrators, outside salespeople, commissioned salespeople, or some combination of exemptions) and overcome Odoo's argument that the exemption inquiry would be individual to each Class Member.  Further, proving damages would be a significant evidentiary challenge, including proving the number of unpaid overtime hours Sales Representatives worked in the absence of contemporaneous time records, and overcoming Odoo's various state-of-mind defenses in order to establish liability and liquidated damages under the FLSA as well as waiting time and wage statement penalties under state law.  *See* ECF No. 53 at 15.

       **2.**     **The Settlement Amount Provides Substantial Relief for Class Members.**

      "[P]erhaps the most important factor" courts consider in determining whether to grant preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement offer."  *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal

quotation marks omitted).  Here, the monetary relief provides excellent value for Class Members.
The $4,637,110.57 common fund provides substantial monetary relief to the Class Members.
Class Members are anticipated to receive an average net recovery of $69.02 per workweek
before applicable taxes and withholdings, which amounts to $4,825.02 on average per Class
Member.  The highest payment to an individual Class Member will be $24,025.36.  Ex. 2 (ILYM
Decl.) ¶ 24.

The average payment is just slightly lower than the $4,997 that Class Counsel estimated
in the Preliminary Approval Motion because Odoo hired additional employees during the Class
Period and because 12 additional Class Members were later added to the Class List.  At the same
time, the average net award per workweek is slightly larger than Class Counsel's previous
estimate of $67.75 because the escalator clause added additional gross value per workweek to the
settlement fund, and Class Counsel are voluntarily declining to request one third of the increased
Total Settlement Amount of $4,637,110.57, but rather are requesting one third of the original
Total Settlement Amount of $4,500,000.  Sagafi Decl. ¶ 15.

As detailed in the Motion for Preliminary Approval, the Total Settlement Amount (minus
the $150,000 PAGA Fund) represents a 18.6% recovery of the total maximum exposure.  ECF
No. 53 at 17-19.  This recovery is substantial given the risks of prevailing on liability and
recovering the maximum possible damages and penalties, and the settlement is well within the
range of reasonableness.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.
2000) (finding a gross recovery of approximately one sixth (16.67%) of the potential recovery
adequate in light of litigation risks); *Villegas v. J.P. Morgan Chase & Co.*, No. 09 Civ. 00261,
2012 U.S. Dist. LEXIS 166704, at *17 (N.D. Cal. Nov. 20, 2012) (preliminarily approving a
settlement where the gross amount represented approximately 15% of the potential recovery).

No portion of the fund will revert to Defendants.  The Total Settlement Amount does not
include Employer Payroll Taxes, which Defendants will fund separately.  *See* Ex. 1 (Settlement
Agreement) § 1.61.  This settlement reflects a valuable recovery for the 598 Class Members and,
in light of the litigation risks, is as good or better than what could have been obtained through

protracted litigation and trial.

As detailed in the Preliminary Approval Motion, the PAGA allocation of $150,000 is also reasonable and should be approved. *See* ECF No. 53 at 20-21.

### 3.    The Extent of Discovery Supports Settlement.

A settlement requires adequate discovery. The touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery. *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, Plaintiffs have litigated these claims zealously for nearly two years and have conducted both formal and informal discovery along the way. The parties also explored the strengths and weaknesses of the claims and defenses during their negotiations. Sagafi Decl. ¶ 16. Thus, the Settlement results from Class Counsel's informed judgment.

### 4.    Counsel's Experience and Views Support Approval.

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]" *Rodriguez*, 563 F.3d at 967.

Here, Class Counsel are some of the most experienced class action litigators in the country in this area. Sagafi Decl. ¶ 4. Class Counsel specialize in prosecuting complex employment and civil rights class actions, and over many years have successfully—and unsuccessfully—litigated many such cases, putting them in a strong position to weigh the strengths and weaknesses of Plaintiffs' claims and Discover's defenses. *Id.* Based on their extensive experience, Class Counsel believe that the Settlement is fair, reasonable, and adequate. *Id.* ¶ 5.

### 5. Class Members Have Reacted Positively to the Settlement.

Class Members in this case have reacted very positively to the Settlement.  Here, none of the 598 Class Members have opted out, and none has objected to any aspect of the settlement, including the overall monetary relief achieved and the amounts allocated to attorneys' fees, costs, and Plaintiffs' service awards.  Ex. 2 (ILYM Decl.) ¶¶ 17-18.

The lack of objections and opt-outs is a strong positive reaction, favoring a finding that the settlement is fair and should be finally approved.  *See DIRECTV, Inc.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles*, 112 Cal. Rptr. 3d 324, 333-35 (Cal. Ct. App. 2010) (affirming final approval and finding reaction to class favorable even where there were two opt-outs and one objection).

As of October 7, 2024, has received 254 Electronic Payment Forms from Class Members, or 42.40% of the group, and the remaining Class Members who did not elect Electronic Payment will be mailed a Settlement Check.   Ex. 2 (ILYM Decl.) ¶ 20.

### 6. The Requirements for Approval under Rule 23(e)(2) Are Met.

As noted above, Rule 23(e)(2) specifies several requirements for approval of a class action settlement.  Each of these requirements is met here.  <u>First</u>, Class Representatives and Class Counsel have adequately represented the Class. Fed. R. Civ. P. 23(e)(2)(A).  As set forth in greater detail in Plaintiffs' Preliminary Approval and Fee Motions, this requirement has been met.  *See* ECF No. 53 at 11-12; *see generally* ECF No. 62 at 14-20.  Class Representatives have the same interests as other Class Members and have dedicated a number of hours to advocating on the Class's behalf.  *Id.*; Sagafi Decl. ¶ 5.  And, as previously noted, Class Counsel are highly experienced and well-regarded in the field of class action civil rights litigation.  *See* Sagafi Decl. ¶ 4; ECF Nos. 62-1 (Sagafi Decl. ISO Fees).

<u>Second</u>, the Settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B).  A settlement reached "in good faith after a well-informed arm's-length negotiation" is presumed

to be fair. *Fernandez v. Victoria Secret Stores, LLC*, No. 06 Civ. 4149, 2008 U.S. Dist. LEXIS 123546, at *15 (C.D. Cal. July 21, 2008).[4]  Here, the Settlement easily meets the rigorous scrutiny required in this District and by *Roes*, for both substantive and procedural reasons.  *See* 944 F.3d at 1048-49.  First, the Settlement is substantively strong, providing excellent monetary relief.  Second, the Settlement is procedurally sound, (a) having been reached after extensive negotiation and discovery, (b) with no parallel litigation that could give rise to reverse auction concerns, and (c) after two mediation sessions, overseen by two different highly experienced mediators with particular expertise in complex class actions. Sagafi Decl. ¶ 4.  This is precisely the type of "an arms-length, non-collusive, negotiated resolution" in which Ninth Circuit courts place "a good deal of stock." *Rodriguez*, 563 F.3d at 965; *see also Bert v. AK Steel Corp.*, No. 12 Civ. 467, 2008 U.S. Dist. LEXIS 111711, at *6-7 (S.D. Ohio Oct. 23, 2008) ("[P]articipation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties").  Further, none of the *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947–49 (9th Cir. 2011) factors suggest collusion here, as there is no "clear sailing" provision in the agreement, and there is no reversion to the Defendant.  *See* Sagafi Decl. ¶ 19.

Third, as discussed in greater detail above, the relief provided by the Settlement is adequate, particularly considering the obstacles Plaintiffs' claims would face in litigation.  Fed. R. Civ. P. 23(e)(2)(C).  Settlement checks will be distributed to Class Members within approximately two and a half months of the Effective Date[5] and Class Members will have 120 days from the date of issuance to cash their checks.  Ex. 1 (Settlement Agreement) at §§ 1.7; 9.10(a).  Attorneys' fees, as awarded by the Court, will be paid within 30 days after the Funding

---

[4] *See also Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action settlement where parties reached agreement after several months of negotiation and the record contained no evidence of collusion); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (private mediation "support[s] the conclusion that the settlement process was not collusive") (citation and internal quotation marks omitted).

[5]      The "Effective Date" means the date on which the Final Approval Order becomes a non-appealable order. Ex. 1 (Settlement Agreement) § 1.15.

Date[6] to the Settlement Administrator, to be distributed to Class Counsel in accordance with the Settlement Agreement. *Id.* § 9.9.

Fourth, the Settlement treats similarly situated Class Members the same. All Class Members who did not sign arbitration agreements will receive $91.70 per workweek, and all Class Members who signed arbitration agreements will receive $61.13 per workweek. Ex. 2 (ILYM Decl.) ¶ 24. The difference in award amounts based on whether Class Members signed arbitration agreements is justified by the higher risks for arbitration bound Class Members, who would likely be required to participate in intensive individual arbitrations to obtain recovery. Sagafi Decl. ¶ 20.

### D.    The Court Should Approve the FLSA Settlement.

Although under the Settlement Agreement the Putative Collective is defined to exclude individuals who worked in California or New York, the Court has conditionally certified the collective, which is composed of Class Members who worked within the three-year FLSA statute of limitations period. *See* ECF No. 33. For the same reasons that the Court should approve the Rule 23 class settlement, the Court should approve the FLSA settlement. *See supra*, Section III.C; *Quiruz v. Specialty Commodities*, No. 17 Civ. 3300, 2020 U.S. Dist. LEXIS 209498, at *6 (N.D. Cal. Nov. 9, 2020) ("[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a [class action] settlement under Rule 23(e)." (citation omitted and alteration in the original)).

### IV.    CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiffs' Preliminary Approval Motion and Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards, Plaintiffs respectfully request that the Court grant Final Approval of the Settlement, grant final certification of the Class and Collective, designate Plaintiffs Kayed, Prado, Carr, and Rivas as Class Representatives, and confirm Outten & Golden LLP as Class Counsel.

---

[6]    The "Funding Date" means fourteen (14) days after the Effective Date. Ex. 1 (Settlement Agreement) § 1.22.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: October 8, 2024         By:    */s/ Jahan C. Sagafi*

Jahan C. Sagafi (SBN 224887)
Molly J. Frandsen (SBN 320094)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Tel.: (415) 638-8800
Fax: (415) 638-8810
Email: jsagafi@outtengolden.com
Email: mfrandsen@outtengolden.com

Melissa L. Stewart*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.: (212) 245-1000
Fax: (646) 509-2060
Email: mstewart@outtengolden.com
*Attorneys for Plaintiffs and Proposed*
*Class and Collective Members and*
*Aggrieved Employees*

*Admitted pro hac vice*

1

## <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on October 8, 2024, I caused the foregoing to be electronically

3 filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent

4 electronically to all registered parties by operation of the Court's electronic filing system.

5

6                              <u>/s/ *Jahan C. Sagafi*</u>

7                              Jahan C. Sagafi (SBN 224887)
                               **OUTTEN & GOLDEN LLP**
8                              One California Street, 12th Floor
                               San Francisco, CA 94111
9                              Tel.: (415) 638-8800
                               Fax: (415) 638-8810
10                             Email: jsagafi@outtengolden.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion For Final Approval of Settlement
3:23-cv-03728-LJC